UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

JEREMY A. WINNERS,

    Plaintiff,

    v.      CAUSE NO. 3:20-CV-1035-JD-MGG

WILLIAM HYATT, et al.,

    Defendants.

OPINION AND ORDER

Jeremy A. Winners, a prisoner without a lawyer, filed a complaint alleging that he has been assaulted at Miami Correctional Facility, and the defendants have failed to protect him. A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nonetheless, pursuant to 28 U.S.C. § 1915A, the court must review the complaint and dismiss it if the action is frivolous or malicious, fails to state a claim, or seeks monetary relief against a defendant who is immune from such relief.

Winners alleges that over a year ago[1], in "L" house, he was beaten and sexually assaulted by another offender while the prison was on lockdown. ECF 1, ¶ 1. Days later, he told defendant Lt. Joshua Morgan that he was suicidal. Morgan initially told him to

---

[1] Winners does not state the dates on which these events occurred.

go back to his dorm, but then sent him to segregated custody. *Id.*, ¶ 2. Winners also discussed his assault with defendant Sgt. Devon Sharp. Sharp allegedly told Winners that he "should kill [him]self, nobody loved [him]." *Id.*, ¶ 4. Winners then slit his wrists and neck. *Id*. He was placed in a "strip cell," which had no mattress and no emergency call button, for three days. *Id*. Winners has now been returned to segregated custody, and he alleges that his assailant "has been back here with me." *Id.*, ¶ 5. He states that he fears for his life. *Id.*, ¶ 6.

## I. CLAIMS FOR DENIAL OF MEDICAL TREATMENT

Winners seeks to proceed against Sharp and Morgan, the officers who spoke to him when he was suicidal. Inmates are entitled to adequate medical care, and Winners can state a claim against the officers if he pleads facts showing that they were deliberately indifferent to his serious medical need. *Estelle v. Gamble*, 429 U.S. 97 (1976). To establish liability, a prisoner must satisfy both an objective and subjective component by showing that: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A medical need is "serious" if it is "so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005).

Winners has stated a claim against Sharp for acting with deliberate indifference to his serious medical needs. The allegation that Winners slit his wrists indicates an objectively serious medical need. Although Winners does not explicitly allege that he told Sharp he was suicidal, he says he talked to Sharp "about every day he worked"

about the assault. *Id.*, ¶ 4. Sharp's alleged statement that Winners "should kill [him]self, nobody loved [him]" raises a plausible inference that Sharp knew Winners was threatening to kill himself and reacted with deliberate indifference. *See Lisle v. Welborn*, 933 F.3d 705, 717 (7th Cir. 2019) ("taunting" and "encouraging" an inmate to commit suicide demonstrated deliberate indifference to his risk of suicide).

Winners has also stated an Eighth Amendment claim against Morgan. Winners alleges that he told Morgan he was suicidal, and Morgan responded by telling him to "go back to your dorm PC," but that Morgan eventually "took [him] to seg."[2] ECF 1, ¶ 2. These allegations support a plausible inference that Winners made Morgan aware that he had a serious medical need, and that Morgan's response – to return him to segregated custody rather than seek medical attention – demonstrated deliberate indifference to his risk of suicide.

Winners makes several allegations about the "strip cell" in which he was placed for three days after he slit his wrists and neck. He states that he was still bleeding when he was placed in the cell, that he was given no mattress, socks, blanket, shirt or toilet paper, that he was refused food twice, and that the cell had no emergency call button. *Id.* However, he does not identify anyone directly responsible for the strip cell or his medical care. Construing his complaint liberally, there is no basis to infer that anyone named in the complaint was personally involved with the strip cell. Because Winners does not identify anyone that can be sued, he cannot state a legal claim under § 1983 for

---

[2] The Court infers that "PC" refers to protective custody, and "seg" to segregated custody.

denial of medical care or unconstitutional conditions of confinement in the strip cell. *Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018) ("[T]o be liable under section 1983, [a defendant] must be personally responsible for the alleged deprivation of the plaintiff's constitutional rights.").

## II. PREA AND PRISON GRIEVANCE CLAIMS

Winners also seeks to proceed against multiple defendants for obstructing his attempts to file a PREA[3] report. He alleges that Shawna Morson, the prison grievance specialist, refused to give him copies of his grievances, and that II Johnson[4] declined to reveal the identities of "the offenders responsible"[5] for his assault. Prisoners cannot sue under PREA, because PREA itself does not create a private right of action. *See Sims v. Doe*, No. 1:18-cv-2394-TWP-MPB, 2018 WL 4027632 at *2 (S.D. Ind. Aug. 22, 2018) (collecting cases). Similarly, prison staff's failure to follow internal policies pertaining to PREA reports does not state a claim. *See Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003) ("However, 42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws or, in this case, departmental regulations and police practices."). Therefore, Winners's allegations about his PREA report do not state a claim for relief.

---

[3] The Prison Rape Elimination Act of 2003 (PREA), 34 U.S.C. § 30307 *et seq.*, provides for national standards for policies to reduce sexual violence in prison.

[4] The court interprets Winners to mean that Johnson was the prison's "internal investigator" into his assault.

[5] Although Winners alleges he was attacked by one offender, he states that two offenders were "responsible" for the attack. *See* ECF 1, ¶ 1.

4

Winners also filed a prison grievance against defendants Ms. Scaiffe (the prison's PREA coordinator), Morson, Warden William Hyatte, and Deputy Warden Sharon Hawk, which he says was wrongly denied. However, the allegation that a prison grievance was not properly considered does not state an independent claim. *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011) ("Prison grievance procedures are not mandated by the First Amendment and do not by their very existence create interests protected by the Due Process Clause, and so the alleged mishandling of [a prisoner's] grievances by persons who otherwise did not cause or participate in the underlying conduct states no claim.").

## III. FAILURE TO PROTECT CLAIM

Winners has also sued Emorado, the officer controlling the cell doors on the day Winners was attacked by the other prisoner. He says that Emorado opened his cell door during lockdown for no legitimate reason, which directly led to his assault. A claim that an officer failed to protect a prisoner from assault cannot be predicated "merely on knowledge of general risks of violence in a detention facility." *Brown v. Budz*, 398 F.3d 904, 913 (7th Cir. 2005). Instead, the plaintiff must show that "the defendant had actual knowledge of an impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." *Santiago v. Wells*, 599 F.3d 749, 756 (7th Cir. 2010). Winners specifically alleges that Emorado opened his door "with deliberate intentions to harm me." ECF 1, ¶ 5. This allegation supports a plausible inference that Emorado knew Winners would face impending harm if Emorado opened his cell door, but Emorado deliberately decided to

5

open the door anyway. Therefore, Winners can proceed against Emorado for failure to protect him from the assault.

Winners also sued two unnamed "offenders responsible" for the attack. The offenders are not government actors acting under color of law, so they cannot be sued under 42 U.S.C. § 1983.

## IV. INJUNCTIVE RELIEF

Although Winners does not explicitly seek injunctive relief, he states that he remains "scared for [his] life, and still no help has been offered." His complaint makes clear that he thinks the prison is not protecting him from his attackers or providing adequate medical care for his depression. The Miami Correctional Facility Warden has both the authority and the responsibility to ensure that Winners receives constitutionally adequate medical care and protection from other inmates. *See Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011). Therefore, Winners will be allowed to proceed on official capacity claims for permanent injunctive relief.

For these reasons, the court:

(1) GRANTS Jeremy A. Winners leave to proceed against Warden William Hyatte in an official capacity to obtain injunctive relief for constitutionally adequate medical care for his depression;

(2) GRANTS Jeremy A. Winners leave to proceed against Warden William Hyatte in an official capacity to obtain injunctive relief to protect him from attack by the inmate or inmates who sexually assaulted him in "L" house;

6

(3) GRANTS Jeremy A. Winners leave to proceed against Joshua Morgan and Devon Sharp for acting with deliberate indifference to his serious medical needs when they declined to provide Winners access to medical care while he was suicidal, in violation of the Eighth Amendment;

(4) GRANTS Jeremy A. Winners leave to proceed against Emorado for failing to protect him from assault in "L" house by opening his cell door and knowingly permitting an inmate to assault him, in violation of the Eighth Amendment;

(5) DISMISSES all other claims;

(6) DISMISSES defendants Shawna Morson, Scaiffe, Johnson, Sharon Hawk, Offender Responsible 1, and Offender Responsible 2;

(7) DIRECTS the clerk to request waiver of service from (and if necessary, the United States Marshals Service to serve process on) defendants William Hyatte, Joshua Morgan, Devon Sharp, and Emorado at the Indiana Department of Correction, with a copy of this order and the complaint (ECF 1), pursuant to 28 U.S.C. § 1915(d);

(8) DIRECTS the clerk to fax or email a copy of the same documents to Warden William Hyatte at the Miami Correctional Facility;

(9) ORDERS the Indiana Department of Correction to provide the United States Marshals Service with the full name, date of birth, social security number, last employment date, work location, and last known home address of any defendant who does not waive service if it has such information;

(10) DIRECTS the United States Marshals Service to serve process pursuant to 28 U.S.C. § 1915(d) on Warden William Hyatte by **April 23, 2021**, if an entry of appearance has not been entered by **April 16, 2021**;

(11) ORDERS Warden William Hyatte to file and serve a response no later than **April 30, 2021**, with supporting documentation and declarations from other staff as necessary, describing how Jeremy A. Winners is being given constitutionally adequate medical care and being protected from the inmate or inmates who sexually assaulted him in "L" house; and

(12) ORDERS, pursuant to 42 U.S.C. § 1997e(g)(2), Joshua Morgan, Devon Sharp, and Emorado to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on March 25, 2021

/s/JON E. DEGUILIO
CHIEF JUDGE
UNITED STATES DISTRICT COURT